## Earp *versus* Cummins.

1. A real estate broker is the agent of the vendor. There must be an employment to constitute him an agent, and his services however slight must be the efficient cause of the sale.

2. If the mere introduction of the property to the buyer, an advertisement or any other service be the immediate and efficient cause of the bargain, the broker earns his commissions.

3. But if the services of the broker do not accomplish a sale, and after the proposed purchaser has decided not to buy, other persons induce him to buy, the broker has no right to commissions.

4. The law regards only proximate not remote causes.

February 27th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia.*

This was an action of assumpsit, brought to December Term 1865 by James R. Cummins against G. B. Earp, to recover commissions for the sale of real estate.

There was evidence that the real estate was in the hands of the plaintiff for sale; that he offered it to various customers by telling them of it and by advertising it in his catalogues and in the

[*Earp v. Cummins.*]

newspapers; he also had a photograph of the house in his office and a memorandum of it in his book; that Richard Young called several times at his office, and that in an interview between the plaintiff and defendant, the plaintiff told defendant he thought he could be of use to him in effecting a sale to Young; that the plaintiff had the property for sale two or three years before the fall of 1864; that Young went to see the property and returned saying that he did not like it. Young himself testified that the plaintiff brought the place to his notice, and he went to see it, but did not like it, abandoned all idea of buying it, and so informed the plaintiff about January 1865; that afterwards he was induced by friends whom he was visiting in the neighborhood to look at it, and commenced a negotiation with the defendant which resulted in his buying it for $14,500. During the negotiation the defendant said he ought to have $15,000 because he would have to pay commissions; Young told him he would not, that Mr. Cummins had nothing to do with the sale, that he did not know Cummins in the transaction. He also testified, "I say now I was not induced to purchase the property by Mr. Cummins * * * I negotiated with Mr. Earp, and bought the place from him; I was not influenced by Mr. Cummins at all in making this purchase."

The plaintiff gave in evidence also the following letters:—

"Mr. James R. Cummins,
    "Media.

"Dear Sir:—I want to rent a comfortable house in Delaware county, near Darby, if possible. Have you any to rent? ·Please send catalogue of Delaware county farms for sale. I also wish to buy a small place in the same neighborhood.
    "RICHARD YOUNG.
"Philadelphia, May 11th 1864."

"Philadelphia, July 26th 1865.
"Mr. James R. Cummins.

"Dear Sir:—I am very anxious to move to Philadelphia this fall, and I wish you to try and sell my place in Delaware county— the price that I have been holding it at is $16,000. I am willing to take now, if sold this fall, $15,000—that is the lowest figure. Do all that you can, and sell it for me.
    "Yours, very respectfully
    "G. BAKEWELL EARP."

"Oak Glen, October 4th 1865.
"James R. Cummins, Esq.

"Dear Sir:—I have sold my wife's place to Richard Young, Esq., of Philadelphia. You will therefore consider it as withdrawn, and no longer for sale by you.

"As you were in no way instrumental in selling it, she does

[Earp *v.* Cummins.]

not expect to pay you any commission, and you could not be serious in supposing that she would do so.

"Very respectfully,

"G. BAKEWELL EARP."

The court (Sharswood, P. J.) charged:—

"The agency must be proved. It is the sole business of the real estate broker to bring buyer and seller together. People who want to buy property look at the advertisements of real estate brokers. It has been decided that if they bring buyer and seller together it is not necessary they should negotiate the sale. A mere seeing it in the catalogue of the broker, or in his advertisements, is sufficient, provided a sale takes place in consequence."

There was a verdict for the plaintiff for $149.64.

The case being removed by writ of error, the charge as above quoted was assigned for error.

*W. H. Sutton*, for plaintiff in error, cited Barnard *v.* Minot, 34 Barb. 94; Shepherd *v.* Heddon, 5 Dutch. 341; Ludlow *v.* Carman, 2 Hilton 107; Cousins *v.* Mitcheson, 3 F. & F. 236; Gibson *v.* Crick, 2 Id. 168, note a; Pierce *v.* Thomas, 4 E. D. Smith 355; Glentworth *v.* Luther, 21 Barb. 145.

*A. Lewis Smith*, for defendant in error, cited Barnard *v.* Minot, 34 Barb. 94; Shepherd *v.* Heddon, 5 Dutch. 341; Ludlow *v.* Carman, 2 Hilton 107; Cousins *v.* Mitcheson, 3 F. & F. 236; Glentworth *v.* Luther, 21 Barb. 145; Morgan *v.* Mason, 4 E. D. Smith 636; Pierce *v.* Thomas, Id. 355; Coleman *v.* Garrigues, 18 Barb. 60; Corning *v.* Calvert, 2 Hilton 56; Inslee *v.* Jones, Brightly's R. 76.

The opinion of the court was delivered, May 13th 1867, by

WOODWARD, C. J.—We think the learned judge stated the rule of law too broadly in saying "it is the sole business of the real estate broker to bring buyer and seller together." And again, "a mere seeing it (the property) in the catalogue of the broker, or in his advertisements, is sufficient, provided a sale takes place in consequence thereof." Too broadly, we mean, for the facts of this case; because, although the property was advertised by the broker, and the attention of the purchaser was first called to it in that way, yet the evidence was that he declined to purchase, and all negotiations for a sale were abandoned for several months, nor was the purchase finally made until other parties again brought the property to his notice, and then Young, the purchaser, says he bought it, not in consequence of Cummins's advertisement, but by reason of this renewed recommendation by other parties. If anybody could tell how he bought, in consequence of what cause,

[Earp v. Cummins.]

Young himself was the proper witness, and he swore, "I was not influenced by Mr. Cummins at all in making this purchase. I did not know him in the transaction, he had nothing to do with the purchase so far as I know."

Now, a real estate broker is the agent of the vendor. There must be an employment to constitute him an agent, and his service as such, however slight, must be the efficient cause of the sale. If a mere introduction of the property to the notice of the buyer effects the sale, the broker earns his commission. An advertisement or any other service is enough if it be the immediate and efficient cause of the bargain. But if the services of the broker, whatever they be, fail to accomplish a sale, and several months after the proposed purchaser has decided not to buy, he is induced by other persons to reconsider his resolution, and then makes the purchase as the consequence of such secondary or supervening influence, the broker has no right to a commission. In a certain sense it may be true that the purchase was in consequence of the broker's advertisement; but for that, the purchaser may never have looked at the property, nor entertained a thought of buying it, but the evidence in this case shows that it was at least due to another so distinct and separate a cause, that it was a mistake to permit the broker to recover. The simple answer to his demand was, that if the evidence was believed he did not cause the sale, that is, his agency was not the immediate and efficient cause of the sale, and law regards only proximate and not remote causes. In the language of Lord Bacon, "it were infinite for the law to judge the cause of causes and their impulsions one of another, therefore it contenteth itself with the immediate cause, and judgeth of acts by that without looking to any further degree. *In jure non remota causa sed proxima spectatur.*"

There is nothing in the cases cited in the argument, nor, it is believed, in others not cited, which will sustain the ruling in this case when it is viewed as legal opinions should be viewed, not as abstractions, but in connection with the facts of the case.

The judgment is reversed, and a *venire facias de novo* is awarded.